IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELIZABETH A. KESSLER, | : |
| Plaintiff, | : |
| v. | : 3:13-CV-00207 |
| | : (JUDGE MARIANI) |
| AT&T, | : |
| Defendant. | : |

## MEMORANDUM OPINION

### I. Introduction

In this case, Plaintiff Elizabeth Kessler brings three causes of action related to workplace discrimination that she allegedly suffered while employed at an AT&T store in Frackville, Pennsylvania. On April 1, 2013, Defendant AT&T filed a Motion to Dismiss (Doc. 7). The only cause of action at issue in the Motion is Count III, which alleges Intentional Infliction of Emotional Distress. As more fully set forth below, the Court will grant the Motion in part and will dismiss Count III with leave to amend.

### II. Factual Allegations

In 2001, Elizabeth Kessler began work as a Retail Sales Consultant at the Schuylkill Mall AT&T store in Frackville, Pennsylvania. (Compl., Doc. 1, at ¶ 11.) She was subsequently diagnosed with Parkinson's Disease in 2007, (id. at ¶ 13), which "worsened, and became more apparent" in June of 2011, (id. at ¶ 16).

Seemingly around June of 2011, Kessler requested from AT&T "several reasonable accommodations to allow her to continue to perform the essential functions of her job," which included flexibility in scheduling and evaluations; extra time to do certain tasks; a chair at her work station; the ability to wear sneakers on the storeroom floor; and provision of a wireless mouse, a touch screen monitor, and a signature stamp, which would alleviate certain difficulties caused by the hand tremors from which she suffered. (*See id.* at ¶¶ 17-18.) The requests were not granted. Instead, according to Kessler, "many of them were belittled, demeaned, ignored, and/or refused by officials, managers, and/or supervisors of AT&T." (*Id.* at ¶ 22.)

In response to these slights and refusals, Kessler filed a charge of Discrimination with the United States Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission on March 28, 2012. (*Id.* at ¶ 25.) The charge alleged "continuous and ongoing discrimination and harassment since June of 2011 on the basis of disability, and retaliation for having made complaints of discrimination and harassment." (*Id.*) Unfortunately, according to Kessler,

> [s]ince making complaints of discrimination based upon disability, and the filing of a Charge of Discrimination with EEOC Kessler suffered more severe harassment and discrimination in the workplace, including but not limited to:
> a) belittling comments by Koszyk [i.e., her supervisor] and co-workers about her condition and physical manifestations thereof;
> b) [being] purposefully shorted on commissions and commission opportunities due to referral [*sic*] to afford accommodation to evaluative customer service standards, and [being] unreasonably disciplined for not meeting production goals (which would have been met but for retaliation and discrimination);

2

c) baseless allegations of and discipline for alleged failure to meet sales quotas;
   d) the issuance of written disciplinary warnings with threats of termination with no legitimate justification;
   e) surveillance and stealthful monitoring with no legitimate supervisory purpose, much beyond any routine observations and supervision accorded non-disabled employees;
   f) being forced to sit in the back room of the store if she needed to sit between customers, causing loss of sales;
   g) being told to choose between using a wheelchair or standing when Plaintiff requested a stool to sit at service desk as an accommodation;
   h) being shunned by supervisory staff at AT&T Store;
   i) being told she must reveal to her customers that she suffers from Parkinson's Disease, so that the customer would know that it was not "contagious;" as a requirement imposed to avoid bad customer reviews in the unchanged/standard customer survey forms, causing Kessler extreme embarrassment and humiliation; and
   j) being required by store management officials to reveal her medical condition to customers.

(*Id.* at ¶ 26.)

In response to these allegations, AT&T filed a Motion to Dismiss. (*See* Def. AT&T's Mot. to Dismiss, Doc. 7.) As noted above, though Plaintiff alleged three separate causes of action, the only one addressed in the Motion to Dismiss is Count III: Intentional Infliction of Emotional Distress (IIED). (*See id.* at 1.) Defendant argues that, because Kessler has not shown "(1) that [her] alleged injury did not arise in the course of her employment; and (2) that [her] alleged injury was motivated by personal reasons," then her Complaint has failed to state a claim for IIED and the claim should be dismissed with prejudice. (Def.'s Brief in Supp. of Mot. to Dismiss, Doc. 8, at 5.) The Court shall now turn to this argument.

3

## III. Standard of Review

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not

4

entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

Connelly v. Steel Valley Sch. Dist., 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." Iqbal, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

Id.

## IV. Analysis

Ordinarily, in order to prevail on an IIED claim, a defendant's "conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Hoy v. Angelone, 720 A.2d 745, 754 (Pa. 1998) (quoting Buczek v. First Nat'l Bank of

5

*Mifflintown*, 531 A.2d 1122, 1125 (Pa. Super. Ct. 1987)). The Pennsylvania Superior Court has repeatedly held that, "generally [a cognizable IIED] case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.'" *See, e.g., Small v. Juniata Coll.*, 682 A.2d 350, 355 (Pa. Super. Ct. 1996).

However, the analysis is different for IIED claims arising out of the employment context. "Pennsylvania's workers' compensation statute provides the sole remedy for injuries allegedly sustained during the course of employment. The exclusivity provision of that statute bars claims for intentional and/or negligent infliction of emotional distress arising out of an employment relationship." *Matczak v. Frankford Candy and Chocolate Co.*, 136 F.3d 933, 940 (3d Cir. 1997) (internal citations, quotations, and alterations omitted). The Pennsylvania Workers' Compensation statute provides, simply and clearly: "The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes[.]" 77 PA. CONS. STAT. ANN. § 481(a).

Here, accepting all of Kessler's well-pleaded facts as true, it is undeniable that her cause of action arose from injuries allegedly sustained during the course of employment. Indeed, the injuries alleged all involve such issues as insulting or belittling comments directed to her at work, workplace discipline, and refusal of reasonable accommodations, all of which allegedly amounted to a hostile work environment. (*See, e.g.*, Compl. at ¶ 27.)

6

Moreover, the only named Defendant in the Complaint is Kessler's former employer, AT&T. (*See id.* at ¶ 7.)

In order to get around the plain directives of the Pennsylvania Workers' Compensation Act, Kessler argues that the alleged conduct falls within the "personal animus" exception to that Act, which excludes from the statutory definition of "injury arising in the course of employment," in relevant part, "an injury caused by an act of a third person intended to injure the employe because of reasons personal to him, and not directed against him as an employe or because of his employment." 77 PA. CONS. STAT. ANN. § 411(1); *see also* Pl.'s Brief in Opp. to Mot. to Dismiss, Doc. 11, at 10.[1] She argues that:

---

[1] Kessler also argues in her Brief in Opposition that AT&T's conduct was "sufficiently extreme and outrageous" to meet the standard requirements for IIED, outside of the employment bar. (*See* Doc. 11 at 9-10.) The Court need not rule on this issue here, however, because the Workers' Compensation Act constitutes an independent ground for dismissal of her claim, and because Defendant has not raised this issue in either its Motion or its Brief in Support thereof. However, the Court notes that IIED generally requires a high level of outrageousness. Courts throughout Pennsylvania confronted with similar facts tend to dismiss IIED claims based on conduct that, while highly offensive, would not necessarily cause the average person to exclaim, "Outrageous!" *See, e.g., Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988) ("At the outset, it must be recognized that it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress."); *Matczak*, 136 F.3d at 940 (finding that terminating a disabled employee for allegedly pretextual reasons, "while possibly discriminatory, could not be considered 'extreme or outrageous'"); *Andrews v. Philadelphia*, 895 F.2d 1469, 1487 (3d Cir. 1990) ("[A]s a general rule, sexual harassment alone does not rise to the level of outrageousness necessary to make out a cause of action for intentional infliction of emotional distress."); *Thompson v. AT&T Corp.*, 371 F. Supp. 2d 661, 684-85 (W.D. Pa. 2005) ("Mistreating someone based upon their disability is certainly rude and unacceptable behavior, and is not permissible under the ADA, but such actions do not equate with the extreme and outrageous conduct necessary to maintain an action for intentional infliction of emotional distress."); *Madreperia v. Willard Co.*, 606 F. Supp. 874, 880 (E.D. Pa. 1985) ("A premeditated plan to force an employee to resign by making employment conditions difficult typically does not amount to extreme or outrageous conduct sufficient to sustain a cause of action for intentional infliction of emotional distress."); *Parker v. DPCE, Inc.*, 1992 WL 501273, at *2-4, *14 (E.D. Pa. 1992) (finding that racially-motivated harassment and termination would not give rise to an IIED claim).

7

> Conduct such as that pled by Kessler, which alleges harassment and discrimination on the basis of disability, setups for failure, and constant singling out for scrutiny and discipline for no legitimate purpose except to belittle and insult, culminating in constructive termination, are [sic] not conduct which is "work related." Such conduct can only reasonably be concluded to be "purely personal" in nature, as the condition of a person's health could not be more "personal" to an individual. Conduct evidencing hatred and contempt of the personal characteristics are, clearly, outside of the scope of the [Workers' Compensation Act]. *See, e.g., Pryor* [*v. Mercy Catholic Med. Ctr.*, 1999 LEXIS 16084], at *11 [(E.D. Pa. 1999)].

(*Id.* at 13.)

The Court finds this argument to be a misapplication of the relevant law. The issue is not whether the subject of a workplace dispute may be considered "personal" or impersonal to the plaintiff, but rather "whether the attack was motivated by personal reasons, as opposed to generalized contempt or hatred, and was sufficiently unrelated to the work situation so as not to arise out of the employment relationship." *McInerney v. Moyer Lumber and Hardware, Inc.*, 244 F. Supp. 2d 393, 400 (E.D. Pa. 2002) (quoting *Fugarino v. Univ. Servs.*, 123 F. Supp. 2d 838, 844 (E.D. Pa. 2000)). In this regard, the Pennsylvania Superior Court has noted that, "where the animosity between the third party and the injured employee is developed because of work-related disputes, the animosity is developed because of the employment, and the injured employee's remedy is exclusively under the Workmen's Compensation Act." *Hammerstein v. Lindsay*, 655 A.2d 597, 601 (Pa. Super. Ct. 1995).

To the extent that the law is concerned with "personal" issues, it is only concerned with the personal *motivations* of the tortious *co-worker*, not with the sensitive nature of the

8

co-worker's attacks. *See Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 160 (3d Cir. 1999) ("The worker's compensation law excepts from its preemptive scope employee injuries caused by the intentional conduct of third parties for reasons personal to the *tortfeasor* and not directed against him as an employee or because of his employment.") (emphasis added). Thus, even some of the most personal subjects, like sexual harassment, can be barred from IIED claims under the Workers' Compensation Act, if they have a sufficient nexus to the workplace. *See id.* at 160 n.16 ("Because [sexual harassment] is like other workplace hazards, we suspect that Pennsylvania would find IIED claims based on this kind of harassment to be preempted."). Therefore, the relevant question is whether the tortious conduct arose from situations or relationship sufficiently related to the Plaintiff's employment, or, conversely, whether it arose for extraneous (i.e., personal) reasons.

On the face of Kessler's Complaint, as written, it is clear that all of Defendant's alleged wrongs were directly related to Kessler's employment. *Cf. also Iacono v. Toll Bros., Inc.*, 2001 WL 1632138, at *2 (E.D. Pa. 2001) ("[B]ecause all of the allegedly offensive conduct occurred at work and arose out of the employment relationship, the personal animus exception is not applicable."). All of her allegations concern things that happened to her at work, and most relate to hostility arising from Kessler's requests for accommodations or the workplace discrimination charges that she filed. (*See* Compl. at ¶¶ 22-26.) There are no allegations that any of her co-workers' conduct was motivated by issues unrelated to their working relationship with her.

Therefore, Count III must be dismissed as currently pleaded. But because allowing leave to amend would not necessarily be futile, dismissal will not be with prejudice. In an amended Complaint, Kessler must plead specific facts showing that the alleged wrongs done to her were motivated by personal animus and were unrelated to her workplace relationships.

## V. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss (Doc. 7) is **GRANTED IN PART** and Count III of Plaintiff's Complaint (Doc. 1) is **DISMISSED WITHOUT PREJUDICE**. A separate Order follows.

Robert D. Mariani
United States District Judge