## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ELIZABETH A. KESSLER,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **3:13-CV-00207** |
| | : | **(JUDGE MARIANI)** |
| **AT&T,** | : | |
| | : | |
| **Defendant.** | : | |

## <u>MEMORANDUM OPINION</u>

### I. INTRODUCTION AND PROCEDURAL HISTORY

Presently before the Court for judgment is the retaliation claim of Plaintiff, Elizabeth

A. Kessler.  Kessler, a former Retail Sales Consultant for Defendant AT&T, initiated the

above-captioned suit on January 28, 2013, alleging claims of discrimination, hostile work

environment and retaliation under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §

12101, *et seq.* and discrimination and hostile work environment under the Pennsylvania

Human Relations Act ("PHRA"), 43 Pa. Stat. § 951, *et seq.* (Doc. 26 at ¶ 1).  By way of

Memorandum (Doc. 58) and Order (Doc. 59) issued September 22, 2015, the Court denied

AT&T's Motion for Summary Judgment (Doc. 51) in its entirety.  Subsequently, a five-day

jury trial on all of Kessler's claims was held, beginning on April 18, 2016.  On April 22, 2016,

the jury returned verdicts for AT&T on the discrimination and hostile work environment

claims and an advisory verdict for AT&T on the retaliation claim.  (Jury Verdict, Doc. 112;

*see also* Order granting AT&T's Motion in Limine, Doc. 93).  Though "findings by an

advisory jury are not binding," *Wilson v. Prasse*, 463 F.2d 109, 116 (3d Cir. 1972), upon review of the evidence and testimony of record, the Court agrees with the jury that Kessler has failed to prove her ADA retaliation claim. For the reasons set forth below, the Court will enter judgment on Plaintiff's retaliation claim in favor of Defendant, AT&T, and against Plaintiff, Elizabeth A. Kessler.

## II. ELEMENTS OF PROOF

The Court is bound by the same law in deciding Kessler's retaliation claim as was the jury. Thus, to prevail on a claim for retaliation under the ADA, Elizabeth Kessler must prove by a preponderance of the evidence that (1) she requested accommodations or filed a charge of discrimination with the Equal Employment Opportunity Commission, activities protected by the ADA; (2) she was subjected to a materially adverse action at the time, or after, the protected conduct took place; and (3) there was a causal connection between the hostile work environment, receipt of unwarranted counseling or discipline, harassment, and/or constructive discharge and her requests for accommodations and/or her filing of a charge of discrimination with the Equal Employment Opportunity Commission. (*See* Jury Charge, Doc. 111).

## III. FINDINGS OF FACT

1. From 2008 to her resignation on October 9, 2012, Plaintiff was a part-time Retail Sales Consultant ("RSC") at the AT&T store in the Schuylkill Mall. (Kechula Trial Test.; E. Kessler Trial Test.)

2

2. Prior to becoming a part-time RSC, Plaintiff was a full-time employee in the Schuylkill Mall AT&T store. (Kechula Trial Test.; E. Kessler Trial Test.)

3. Plaintiff's immediate supervisor was the Store Manager of AT&T's Schuylkill Mall location, Victoria Kechula (previously, Victoria Koszyk). (Kechula Trial Test.; E. Kessler Trial Test.)

4. The Area Retail Sales Manager, Christopher McCambridge, was Kechula's immediate supervisor at the time Plaintiff allegedly experienced the retaliation that is the subject of this law suit. (Kechula Trial Test.; McCambridge Trial Test.)

5. Plaintiff was diagnosed with Parkinson's Disease while in the employ of AT&T. (Dr. Barbour Trial Test.; E. Kessler Trial Test.)

6. Plaintiff first requested disability-based accommodations from Kechula, McCambridge, and AT&T in the spring of 2011. (Kechula Trial Test.; E. Kessler Trial Test.)

7. Plaintiff was issued a "Counseling" on May 18, 2011 for a confrontation with another employee on the sales floor in front of customers. (Def. Ex. 5; Pl. Ex. 12).

8. On or about July 21, 2011 the AT&T Integrated Disability Service Center, run by the third party Sedgwick CMS, communicated recommended permanent restrictions to Plaintiff's supervisors. (Def. Ex. 20; Pl. Ex. 21).

9. On or about August 5, 2011, Plaintiff, Kechula, and McCambridge met in regard to her requested accommodations.

3

10. On November 20, 2011, Plaintiff sent an email to McCambridge, copying Kechula, alerting him that Assistant Store Manager Kelly Livergood was being rude to her or ignoring her on the sales floor. (Def. Ex. 99; Pl. Ex. 25)

11. Multiple employees were experiencing similar problems with Livergood, who was subsequently counseled and disciplined on the matter. (Def. Ex. 99).

12. Plaintiff was issued a "Counseling" on December 22, 2011 for failing to meet sales goals. (Def. Ex. 6; Pl. Ex. 26)

13. Plaintiff does not dispute the sales data that served as the basis for this Counseling. (E. Kessler Trial Test.)

14. On Sunday, January 1, 2012, Plaintiff sent an email to Kechula and McCambridge stating:

> I have been waiting for the accommodations to take affect that were approved by at&t on 8/15/2011. However as of 1/1/2012 I still have only the ability to wear sneakers and partial scheduling considerations'. Is there a reason why at&t refuses to accommodate me? My circumstances are becoming intolerable. Please reconsider my previously approved accommodations to help me do my job. (Def. Ex. 22)

15. On Sunday, January 1, 2012, Kechula sent an email responding to Plaintiff's email of the same date, writing:

> Betsy,
> What is it that you are waiting for? Since then, We've also had
> . the computer cords adjusted on the computers at the back cash
> wrap for the mouse, you only work at the back computers 6 and
> 7. You are allowed to take a break to rest, which you do. You
> are allowed to bring a chair out on the floor to sit for a few mins

4

each hour, all which was explained to you at the time it was
approved and that is when the accommodations has taken
effect The only thing I can think of is not having a specific chair,
which currently a new model is on order, but other chairs are
available for you to use, and doesn't interfere with your
accomodation, which was also explained when Chris and I met
with you.
You have never come to me with your concerns prior to this
email, we talk often and you have never mentioned anything. If
you would like to review it again, I will be back on Tuesday and
more than happy to discuss with you. If there is anything else I
am missing pleaset let me know.
Vickie Koszyk

Kechula also included Kyle Mundis, an AT&T Human Resources employee on her

reply. (Def. Ex. 23; Pl. Ex. 27).

16. On January 9, 2012, Plaintiff sent Kechula an email characterizing Kechula's

    January 1, 2012 email as "aggressive and harassing" and informing Kechula that she

    felt "harassed and discriminated against in [her] workplace," that she was receiving

    "threats and insults" from Kechula and found her "openly hostile." (Def. Ex. 26; Pl.

    Ex. 28)

17. Plaintiff later flipped facedown a printout of the January 9, 2012 email and told

    Kechula that she did not mean what she had said in it and further told Kechula to rip

    up the printout. (Kechula Trial Test.).

18. Kechula and Plaintiff then discussed what issues Plaintiff was having with respect to

    accommodations and as a result of the conversation, a stool was purchased and

5

housed in a cabinet at the cash register where Plaintiff frequently worked. (Kechula Trial Test.)

19. Later, a high chair with a back was obtained for Plaintiff. (Kechula Trial Test.)

20. Kechula permitted Plaintiff to use the stool at one of the back registers and the chair at the other back cash registers as long as she was not servicing a customer at the time. Kechula never told Plaintiff that she could only use the chair or stool in a nearby corner or nook. (Kechula Trial Test.)

21. On or about January 17, 2012 a "pause clause" was put in effect, keeping Plaintiff at the "Counsel" level of performance discipline for the December performance issue, rather than progressing her to the Written Warning stage. This was issued because McCambridge did not feel it was appropriate to advance Plaintiff to the next level of discipline given her recent emails raising concerns about the implementation of accommodations for her disability. (McCambridge Trial Test.; see also Def. Ex. 7; Pl. Ex. 29; Pl. Ex. 7).

22. Kechula was invited to and attended a baby shower held for Plaintiff's adult daughter. (Def. Ex. 104; Kechula Trial Test.)

23. On March 20, 2012, Plaintiff was issued a Written Warning for a customer treatment violation occurring on February 26, 2012. (Def. Ex. 8; Pl. Ex. 33).

24. On May 24, 2012, Plaintiff was issued a Final Written Warning for failing to meet sales goals. (Def. Ex. 9; Pl. Ex. 36).

25. On June 12, 2012, Plaintiff sent Kechula, McCambridge, Reginald Hardy, and Kyle Mundis an email characterizing the Final Written Warning as "retaliatory" and stating that she felt she "was talked to in a condescending, sarcastic and demeaning manner" during a meeting about the Final Written Warning. Plaintiff also stated, *inter alia*, that the addressees "mock[ed] [her] during work hours; and tolerate[d] if not encourage co-workers to do so as well." (Pl. Ex. 38).

26. Plaintiff does not dispute the sales data that served as the basis for this Final Written Warning. (E. Kessler Trial Test.)

27. In 2012, Kechula offered to provide Plaintiff with a Bluetooth headset with voice command options to address Plaintiff's concern about using a touch screen, store-issued phone, or "COU." (Kechula Trial Test.; *see also* Def. Ex. 39; Pl. Ex. 40).

28. Plaintiff filled out an EEOC Intake Questionnaire on or about November 30, 2011. On the form, Plaintiff indicated that she wanted to file a charge of discrimination. (Def. Ex. 128).

29. Plaintiff filed a charge of discrimination with the EEOC on or about March 28, 2012. (Def. Ex. 129; Pl. Ex. 34).

30. Faye Savant, a Senior EEO Consultant for AT&T, created a position statement for the EEOC on behalf of AT&T and communicated with the management of the Schuylkill mall store in so doing. (Savant Dep., Pl. Ex. 65)

31. In 2007, Plaintiff received a "Counseling Notice" related to a "heated discussion" with a co-worker, a "Written Warning" related to two instances of inadequate customer service, and a "Final Written Warning" for failing to meet certain sales quotas. (Def. Ex. 2, 3, and 4).

32. Issuing disciplines as per the Retail Sales Success Measures (RSSM) Sales Performance Policy was a normal part of Kechula's job as a store manager. (Kechula Trial Test; *see also* Pl. Ex. 7).

33. Kechula suffers from a progressive disease and is sensitive to Plaintiff's disability. (Kechula Trial Test.).

34. Though Kechula was Plaintiff's supervisor, they also had a friendly relationship and had things in common, including becoming grandmothers around the same time. (Kechula Trial Test.).

## IV. CONCLUSIONS OF LAW

1. Plaintiff proved by a preponderance of the evidence the first element of an ADA retaliation claim: that she engaged in protected activities under the ADA. Specifically, Plaintiff proved that she filed a charge of discrimination with the EEOC and requested workplace accommodations of her Parkinson's Disease. (Findings of Fact, *supra*, ¶¶ 6, 28-30).

2. Plaintiff must next prove the second element of an ADA retaliation claim: that she was subjected to a materially adverse action at the time, or after, the protected

8

conduct took place. Put another way, Plaintiff must prove that her allegations of hostile work environment, receipt of unwarranted counseling or discipline, harassment, and/or constructive discharge and that they were serious enough that they well might have discouraged a reasonable worker from requesting accommodations or filing a charge of discrimination with the Equal Employment Opportunity Commission. (See Jury Charge, Doc. 111).

3. In determining whether a work environment is "hostile," the Court must consider all of the relevant circumstances.  Conduct that amounts only to ordinary socializing in the workplace, such as occasional horseplay, occasional use of abusive language, tasteless jokes, and occasional teasing, does not constitute an abusive or hostile work environment.  A hostile work environment can be found only if there is extreme conduct amounting to a material change in the terms and conditions of employment. Moreover, isolated incidents, unless extremely serious, will not amount to a hostile work environment. It is not enough that the work environment was generally harsh, unfriendly, unpleasant, crude or vulgar to all employees. (See Jury Charge, Doc. 111).

4. In order to find a hostile work environment, the Court must find that Plaintiff was harassed because of her disability or her requests for accommodations. The key question is whether Elizabeth Kessler, as a person with Parkinson's disease was

subjected to harsh employment conditions to which employees without a disability
were not. (*See* Jury Charge, Doc. 111).

5.  Plaintiff failed to produce evidence sufficient to prove a hostile work environment.
    The Court credits the testimony of Kechula and McCambridge that efforts were made
    to assist Plaintiff in connection with her Parkinson's Disease, that there was an
    ongoing, interactive process with respect to accommodations, and that at no time
    was Plaintiff the subject of discriminatory, insulting, offensive, or demeaning
    comments. The Court does not credit the Plaintiff's assertions that she was
    harassed by store employees and management, that her co-workers refused to help
    her, or that she was mocked by Kechula. (Findings of Fact, *supra*, ¶¶ 10-11, 15-21,
    25, 27, 33).

6.  The counselings and disciplines that Plaintiff received in 2011 and 2012 were issued
    for proper cause and were not the result of any retaliatory motive. Plaintiff does not
    contest the sales data that lead to two of these reviews. (Findings of Fact, *supra*, ¶¶
    13, 26, 31-32).

7.  Plaintiff was not subjected to any harassment in the workplace. Again, the Court
    credits the testimony of Kechula and McCambridge that efforts were made to assist
    and accommodate Plaintiff in connection with her Parkinson's Disease, that there
    was an ongoing, interactive process with respect to accommodations, and that at no
    time was Plaintiff the subject of discriminatory, insulting, offensive, or demeaning

comments. The Court does not credit the Plaintiff's assertions that she was
harassed by store employees and management, that her co-workers refused to help
her, or that she was mocked by Kechula. (Findings of Fact, *supra*, ¶¶ 13, 26, 31-
32).

8. Furthermore, Plaintiff's continuing social friendship with Kechula during her
   employment with AT&T significantly undercuts her claim that Kechula was in any
   way acting with a discriminatory, harassing, or retaliatory intent. (Findings of Fact,
   *supra*, ¶¶ 22, 34).

9. In order to prove that she was constructively discharged, Elizabeth Kessler must
   prove that she was forced to resign due to conduct that discriminated against her on
   the basis of her disability. Such a forced resignation, if proven, is called a
   "constructive discharge." To prove that she was subjected to a constructive
   discharge, Elizabeth Kessler must prove that working conditions became so
   intolerable that a reasonable person in the employee's position would have felt
   compelled to resign. (*See* Jury Charge, Doc. 111).

10. Plaintiff failed to produce evidence sufficient to prove that she was constructively
    discharged. Again, the Court credits the testimony of Kechula and McCambridge that
    efforts were made to assist and accommodate Plaintiff in connection with her
    Parkinson's Disease, that there was an ongoing, interactive process with respect to
    accommodations, and that at no time was Plaintiff the subject of discriminatory,

insulting, offensive, or demeaning comments. The Court does not credit the

Plaintiff's assertions that she was harassed by store employees and management,

that her co-workers refused to help her, or that she was mocked by Kechula.

(Findings of Fact, *supra*, ¶¶ 13, 26, 31-32).

11. Because the jury and this Court have each independently found that Plaintiff was not

subjected to a hostile work environment, receipt of unwarranted counseling or

discipline, and/or harassment, and/or that she was constructively discharged,

Plaintiff was not subjected to a materially adverse action at the time, or after, the

protected conduct took place. Thus the Court finds that Plaintiff failed to prove the

second element of ADA retaliation.

12. Because Plaintiff failed to prove the second element of the ADA retaliation claim, she

necessarily failed to prove the third element: that there was a causal connection

between her protected activities and any materially adverse action occurring at the

time of, or after, the protected activities.

13. Further, the Court finds that the adverse actions taken against her in the form of any

Counseling or more progressive form of discipline, were supported by evidence

showing they were taken for proper cause and were not undertaken or otherwise

tainted by discriminatory or retaliatory motive or intent.

## V. CONCLUSION

For the foregoing reasons, the Court will enter judgment in favor of Defendant,

AT&T, and against Plaintiff, Elizabeth A. Kessler, on Plaintiff's retaliation claim. A separate

entry of Judgment follows.

DATE: 4/24/16

Robert D. Mariani
United States District Judge

13